COMMONWEALTH *vs*. WILLIAM DWYER.

Suffolk. April 14, 1986. — October 1, 1986.

Present: GRANT, KAPLAN, & PERRETTA, JJ.

*Evidence,* Prior conviction, Judicial discretion. *Practice, Criminal,* Instructions to jury, Assistance of counsel. *Error,* Harmless.

In a criminal case in which the defendant elected not to testify, the judge did not abuse his discretion in denying the defendant's motion in limine seeking to preclude the admission of his prior criminal convictions for impeachment purposes, where defense counsel provided no information of the nature of the evidence to be presented, arguing only that the theory of the defense, self-defense, could not be put forward without the defendant's testimony. [726-728]

At a criminal trial, the judge's failure to include, in his instructions on consciousness of guilt, a statement that the defendant could not be convicted on the basis of evidence of consciousness of guilt alone did not present a substantial risk of a miscarriage of justice in the context of the evidence presented and the judge's instructions considered as a whole. [728-729]

At a criminal trial, defense counsel's failure to object to an error in the jury instructions on consciousness of guilt did not deprive the defendant of effective assistance of counsel, where the failure to make an objection could reasonably have been a tactical decision based on the evidence, and where, in any event, the error in the instructions was harmless. [729]

INDICTMENT found and returned in the Superior Court Department on January 21, 1983.

The case was tried before *John T. Ronan, J.*

*Philip E. Cleary* for the defendant.

*David B. Mark,* Assistant District Attorney (*Robert E. Baylor,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

PERRETTA, J. The defendant was found guilty by a jury on an indictment charging him with assault and battery by means

of a dangerous weapon, a knife. See G. L. c. 265, § 15A (*b*). On appeal, he argues: (1) that the trial judge abused his discretion in denying his motion in limine seeking to exclude the admission for impeachment purposes of his prior criminal convictions; (2) that the jury instructions on the issue of consciousness of guilt were erroneous and created a substantial risk of a miscarriage of justice; and (3) that his trial counsel's failure to take an objection to the instructions deprived him of the effective assistance of counsel. We affirm.

There was evidence to show that on October 5, 1982, between 10:00 P.M. and 11:00 P.M., the victim was a member of a crowd of about fifteen to twenty-five persons. They were milling about on a street and sidewalk in the South Boston section of Boston. The victim was standing in the middle of the sidewalk, apparently looking for something on the ground, when the defendant and a female companion came along. The victim and the defendant's companion had an unpleasant exchange of words about the fact that the victim was blocking passage on the sidewalk. The incident over, the defendant and his companion continued on their way to a package store a short distance down the street.

On their return from the store, the defendant was carrying one or two six-packs of beer. The victim was still standing in the middle of the sidewalk. Again, the defendant's companion spoke out to the victim about blocking their path.

During this second argument, the defendant dropped his package to the ground and said, "The hell with this." He stepped toward the victim, saying, "No trouble, no trouble," all the while reaching for something in the back pocket of his trousers. Drawing two knives from his pocket, the defendant lunged towards the victim and stabbed him twice. As this was happening, the defendant's companion fled to her nearby apartment building.

When the crowd realized that the victim had been stabbed, they tried to grab the defendant, but he was able to break free of them. Pursued by the victim's friends, some of whom were throwing bottles at him, the defendant ran to his companion's apartment building. Once inside the main hallway, he bran-

dished his knife, and the crowd backed out of the building. The defendant slammed the door, ran upstairs, and secured himself inside his companion's apartment. The victim's friends called the police and then positioned themselves around the building so that the defendant could not leave.

The police arrived and were directed to the appropriate apartment. They found the defendant hiding in the bedroom. One knife was found in the bedroom and another on the ground directly beneath a window of the apartment.

1. *Use of the defendant's record of prior convictions.* On the morning of the trial, defense counsel presented the trial judge with a motion in limine. By that motion, defense counsel sought "to preclude the Commonwealth from introducing prior criminal convictions should the defendant elect to testify in his behalf." No reference to any particular conviction was made.

In arguing the motion, defense counsel advised the trial judge that "it's still up in the air with [the defendant] as to whether in fact he's going to take the stand." He described the defendant's prior criminal record as including "some similar type offenses" and explained that the defendant's theory of defense "will be a self-defense type of situation." The problem, however, as defense counsel further argued, was that the present whereabouts of the defendant's companion on the night in question were unknown. Hence, unless the defendant were to testify, it would be "almost impossible to get that [defense] across to the jury," and the "only way [the defendant] can go is to testify."

A copy of the defendant's record was presented to the judge. In response to the prosecutor's argument on the motion, defense counsel made it quite clear that he intended to impeach the victim's credibility by use of his record of prior convictions for assault with intent to rob and unlawfully carrying a dangerous weapon, to wit, metallic knuckles.

There can be no doubt on the record before us that the trial judge was well aware of the fact that a ruling on the motion was a matter for the exercise of his discretion: "I'll exercise my discretion by denying your motion, and saving whatever

rights you may have to that." See generally *Commonwealth* v. *Knight,* 392 Mass. 192, 194-195 (1984). Contrast *Commonwealth* v. *Ruiz, ante* 297, 301 (1986); *Commonwealth* v. *Reid, post* 730, 733 (1986).

Because the defendant elected not to testify, our analysis of the trial judge's exercise of discretion tracks that set out in *Commonwealth* v. *Gonzalez, ante* 274, 280 (1986), which discusses *Luce* v. *United States,* 469 U.S. 38 (1984), at 277-279. "[R]eview[ing] the exercise of discretion only on the basis of what was before the judge at the time of exercise," *Gonzalez, ante* at 280, we begin by noting that defense counsel's argument on the motion provided no information of the "nature of the evidence the parties intend[ed] to present," *id;* rather, the trial judge was simply advised that the theory of the defense, self-defense, could not be presented without the defendant's testimony.[1] Another consideration advanced to the trial judge was the characterization of the defendant's record as including "some similar type offenses." The defendant's prior record was extensive.[2] Two of the prior offenses were identical and some similar to the crime charged. Most of the offenses could be viewed as similar in nature to that under consideration to the extent they reveal a propensity for assaultive behavior. Compare *Commonwealth* v. *Reid, post* at 733. There is room for disagreement on the question of the "bearing of the particular conviction[s] on credibility," *Commonwealth* v. *Diaz,* 383 Mass. 73, 81 (1981), but that observation is insufficient basis

---

[1] After the theory of the case had been sharply put in perspective through examination, direct and cross, of the Commonwealth's witnesses, the Commonwealth rested. The defendant neither renewed his motion in limine, see *Commonwealth* v. *Gonzalez, ante* at 279 n.8, nor presented evidence.

[2] The Commonwealth argues that we should not consider the nature of the defendant's prior record, which is before us by way of an addendum to the defendant's brief, as it was never offered in evidence or otherwise made a part of the record. See *Commonwealth* v. *Core,* 370 Mass. 369, 371 (1976); *Commonwealth* v. *Gray,* 5 Mass. App. Ct. 296, 300 (1977). Although there may be merit to this contention, we note that, unlike in *Core* and *Gray,* here the transcript expressly reflects that the record in question was presented to the trial judge. Moreover, there does not appear to be any dispute as to the accuracy of the record of convictions.

for overturning the trial judge's exercise of discretion. Finally, the judge could consider defense counsel's declared intent to impeach the credibility of the victim by use of his convictions for assault with intent to rob and unlawfully carrying a dangerous weapon. See *Commonwealth* v. *Knight,* 392 Mass. at 194 n.1. See also *Gordon* v. *United States,* 383 F.2d 936, 941 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968); *United States* v. *DiVarco,* 484 F.2d 670, 677 (7th Cir. 1973), cert. denied, 415 U.S. 916 (1974).

In view of these circumstances appearing on the record at the time of the trial judge's ruling on the motion, we conclude that he did not abuse his discretion.

2. *Consciousness of guilt.* Notwithstanding the fact that the defendant did not testify, the issue of self-defense was brought home to the jury, and clearly so, through cross-examination of the Commonwealth's witnesses, closing arguments, and jury instructions. At the conclusion of the charge, the prosecutor, based upon the evidence that the defendant "did in fact flee and hide" in his companion's apartment, requested an additional instruction on flight as evidence of consciousness of guilt. The instruction then given reads as follows:

> "And the other evidence is sometimes called consciousness of guilt. And in this case there was some evidence of flight, or whatever, or someone went through an apartment, or whatever it was. I don't want to stress it or focus on it; and it's for you to believe it or disbelieve it.
>
> Now, if you find a pattern of circumstances that may suggest to you consciousness of guilt, then yes — you may consider that. If it is equally as consistent with fright, or whatever, then so be it. But that's the purpose of that evidence as to what happened after the alleged facts here. Then that's why it's permitted."

It is obvious that these instructions are deficient in that they failed to inform the jury that the defendant could not be convicted on the basis of evidence of consciousness of guilt alone. See *Commonwealth* v. *Toney,* 385 Mass. 575, 585 (1982);

*Commonwealth* v. *Matos,* 394 Mass. 563, 565-566 (1985). No objection was taken to these instructions, and our review, therefore, is under the standard of a risk of a miscarriage of justice.

As earlier noted, there was evidence from the Commonwealth's witnesses that the victim's friends pursued and threw bottles at the defendant. The trial judge displayed no enthusiasm for the instructions, which could be described as almost summary and in which he stated that he wanted neither to stress nor focus upon the evidence of flight. He did, however, inject into the instructions for the jury's consideration the question whether the defendant fled out of fear. Such an instruction, in our view, was consistent with the Commonwealth's evidence and the defendant's theory of defense. We conclude that the error in the trial judge's instructions on consciousness of guilt was harmless. See *Commonwealth* v. *Simmons,* 20 Mass. App. Ct. 366, 373-374 (1985). Compare *Commonwealth* v. *Brow,* 20 Mass. App. Ct. 375, 379-380 (1985).

3. *Ineffective assistance of counsel.* Defense counsel's lack of an objection to the jury instructions on consciousness of guilt could reasonably have been a strategy decision based upon the evidence, the theory of the defense, and the substance of the jury charge itself. Cf. *Commonwealth* v. *Brow, supra* at 380 n.4 ("In some cases, it may be trial strategy for defense counsel not to request a consciousness of guilt instruction"); *Commonwealth* v. *Clark,* 20 Mass. App. Ct. 392, 396 (1985) ("[H]aving the judge refer to the evidence of consciousness of guilt tends to emphasize the importance of that evidence in the jurors' minds. We would not second guess defense counsel's decision as to the wiser tactic to employ in a particular case"). In any event, as we have concluded that the error in the instructions was harmless, it follows that any failure to object to those instructions "was not of sufficient significance to constitute a deprivation of the defendant's right to the effective assistance of counsel." *Id.* at 395.

*Judgment affirmed.*