COMMONWEALTH vs. OLIVER F. BEAUCHEMIN.

Norfolk. February 7, 1991. - May 20, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Required finding, Comment by prosecutor, Voir dire, Execution of sentence. *Lewd, Wanton and Lascivious Person. Statute,* Construction. *Evidence,* School records. *Words,* "Public place."

A teacher charged under G. L. c. 272, § 3, with being a lewd, wanton and lascivious person on the basis of acts allegedly committed in the faculty lounge of a high school during a weekend debate meet, and in a super-market parking lot on a day when school was cancelled due to snow, was entitled to required findings of not guilty where the evidence was insufficient to permit the jury to find that either location was a public place, in circumstances where there was little likelihood of the alleged sexual conduct being observed by a casual passerby. [183-184]

At the trial of a defendant charged with being a lewd, wanton and lascivious person and with indecent assault on a child over the age of fourteen, the circumstances of the judge's voir dire of three witnesses presented by the defendant, including a comment by the prosecutor taking unfair advantage of the voir dire, constituted prejudicial error. [184-185]

At a criminal trial, certain school records of the complaining witness, which the defendant had lawfully obtained pursuant to a subpoena, were improperly excluded from evidence as being confidential under G. L. c. 66, § 10, and c. 4, § 7, Twenty-sixth (c). [185]

A single justice of the Appeals Court did not err in granting a stay of execution of a criminal defendant's sentence of incarceration pending appeal on condition that the defendant not leave his house or property while the stay was in effect. [185-187]

COMPLAINTS received and sworn to in the Stoughton Division of the District Court Department on January 20, 1989.

On transfer to the jury session of the Dedham Division, the cases were tried before *Leah W. Sprague,* J.

A motion for stay of execution filed in the Appeals Court was heard by *George Jacobs,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Traft* for the defendant.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.

NOLAN, J., The defendant, Oliver Beauchemin, was convicted on two complaints of indecent assault and battery on a child over the age of fourteen, and two complaints of being a lewd, wanton and lascivious person. The Commonwealth presented evidence that Beauchemin, a high school Latin teacher, had developed an unusually close relationship with the complainant, a male student. Several times during the course of this relationship Beauchemin allegedly placed his hand on the complainant's crotch. Two of those instances form the basis of the charges on which Beauchemin was convicted. One incident occurred in the faculty lounge of Sharon High School during a weekend debate meet. The other occurred in a supermarket parking lot on a day when school was canceled due to snow.

Beauchemin appeals, arguing that the Commonwealth failed to prove the elements of the lewd, wanton and lascivious person charge, that the indecent assault charge was duplicative of the lewd, wanton and lascivious person charge, that the judge wrongfully excluded evidence, that there was prosecutorial misconduct during closing arguments, that the judge erred in instructing the jury, that extraneous evidence went before the jury, and that the single justice of the Appeals Court improperly conditioned the stay of sentence pending appeal. We transferred the appeal to this court on our own motion. We hold that a required finding of not guilty should have been entered as to the complaint for being a lewd and lascivious person, and that the judge erroneously conducted a voir dire of certain defense witnesses. We therefore reverse the judgments and remand this case for further proceedings. We reach only these remaining claims which may arise in the retrial of the case.

### 1. *Crime of Being a Lewd Person.*

At the close of the Commonwealth's case, Beauchemin moved for a required finding of not guilty regarding the lewd, wanton and lascivious person charges. The judge denied the motion. Beauchemin appeals, arguing that the Commonwealth failed to present evidence that the conduct was observed by a member of the public who was thereby offended, an essential element of the crime. In reviewing the denial of the motion for a required finding of not guilty, "we examine the record at the close of the Commonwealth's case-in-chief to determine whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crimes beyond a reasonable doubt." *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 348 (1983).

General Laws c. 272, § 53, provides criminal penalties for "lewd, wanton and lascivious persons in speech or behavior."[1] In 1980, we construed that language "to prohibit only the commission of conduct in a public place, or the public solicitation of conduct to be performed in a public place, when the conduct committed or solicited involves the touching of the genitals, buttocks, or female breasts, for purposes of sexual arousal, gratification, or offense, by a person who knows or should know of the presence of a person or persons who may be offended by the conduct." *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117-118 (1980). The jury could have found that Beauchemin touched the victim's genitals for the purpose of either sexual arousal or offense.

In *Commonwealth* v. *Ferguson*, 384 Mass. 13 (1981), we construed the term "public place" in a closely related statute,

---

[1] General Laws c. 272, § 53 (1988 ed.), provides: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

G. L. c. 272, § 35. "The essential query is whether the defendant intended public exposure or recklessly disregarded a substantial risk of exposure to one or more persons. . . . The Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." (Citations omitted.) *Id.* at 16. One incident took place in a car parked in a supermarket parking lot during the day in the midst of a snowstorm which was sufficiently heavy to cause the schools to close. The other took place in a teachers' faculty room during a weekend debate meet when the complainant and Beauchemin were alone. There is no evidence in the record warranting a finding that the complainant and Beauchemin were observed.

Neither the parking lot nor the faculty lounge was a public place in the circumstances because there was little "likelihood of [sexual conduct on the part of the complainant and the defendant] being observed by a casual passerby." *Id.* Therefore, the motion for a required finding of not guilty should have been allowed.

2. *Voir Dire.*

The defendant presented three former students as witnesses. Their testimony was designed to show that Beauchemin took an active interest in many of his students and that the attention he admittedly gave the complainant was not extraordinary. The judge was concerned that the witnesses would offer no relevant evidence. At the Commonwealth's request, therefore, she conducted a voir dire of each of the three witnesses.

Although a trial judge possesses wide discretion in evidentiary matters, incautious use of the voir dire may lead to problems. In this case, the Commonwealth was given untoward discovery of the witnesses' statements immediately prior to examination. The Commonwealth's reference to "rehearsed" testimony in closing arguments was improper because the prosecutor took unfair advantage of the voir dire.

The combination of the voir dire and the prosecutor's comment constituted prejudicial error.

3. *Admissibility of School Records.*

On direct testimony, the complainant testified that during his junior year his school performance "was the worst it had ever been in my life." Before that year, he was "a fairly good student, I remember in my sophomore year at the end of the year all of my grades were . . . I didn't have any A's but I didn't have any C's, D's or F's, they were all B-, B, B+."

On cross-examination, the defense attorney sought to introduce the complainant's school records. Those records would have shown that the complainant did receive one grade below B- his sophomore year, a D  in "Ceramics II." The records also would have shown that the complainant received two C's his freshman year. The Commonwealth objected, arguing that the records were privileged. The judge did not allow the records in evidence, ruling that the records were confidential under the statutes noted below.

There is no privilege which would prevent the introduction of relevant school records in evidence at a trial. School records are not subject to public disclosure under G. L. c. 66, § 10. See G. L. c. 4, § 7, Twenty-sixth (*c*). However, regulations issued by the Department of Education provide that third parties may gain access to school records upon service of a lawfully issued subpoena. Indeed, the defendant was in possession of the records, having lawfully subpoenaed them earlier. The judge should not have excluded the records. On remand, the records should be allowed in evidence.

4. *Conditions of the Stay.*

Beauchemin applied to a single justice of the Appeals Court for a stay of his sentence pending appeal. The Commonwealth opposed the stay, arguing that Beauchemin was a danger to the community. In support of this position, the Commonwealth presented a report from an expert in pedophilic behavior who had examined Beauchemin and said that he remained a danger to others.

The single justice was concerned that Beauchemin was a danger to others. He gave Beauchemin the option of having

the stay denied, in which case he would begin to serve his sentence, or have the stay granted with certain conditions. Those conditions were that he could not leave his home or property during the pendency of the stay and that no minor visitors would be allowed on the property. The time spent under these conditions was not to be credited in any manner against time to be served on the sentence. Beauchemin agreed to these terms through his attorney. Several months after the stay was granted, Beauchemin requested that the stay be lifted and he began to serve his sentence.

Beauchemin now contends that the conditions imposed by the single justice were improper and that the time he spent in house confinement ought to be credited toward his sentence.[2] We disagree.

Rule 31 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 842, 902 (1979), states in part that, "If execution of a sentence of imprisonment is stayed, the judge may at that time make an order relative to the custody of the defendant." The single justice's order that Beauchemin stay at his home was "an order relative to the custody of the defendant," and thus was authorized by rule 31 so long as the power was not abused.

The single justice was concerned that Beauchemin posed a danger to people in the community. This is a proper consideration when weighing whether to stay a sentence pending appeal. *Commonwealth* v. *Allen*, 378 Mass. 489, 498 (1979). *Commonwealth* v. *Hodge (No.1)*, 380 Mass. 851, 853-854 (1980)(judicial interpretation of G. L. c. 279, § 4, applicable to Mass R. Crim. P. 31). Because of this concern, the single justice would have been warranted in refusing the stay altogether. The alternative presented by the single justice, and accepted by Beauchemin, was carefully tailored to address the single justice's legitimate concerns. Beauchemin was free at any time to seek a removal of the stay and begin serving

---

[2]The defendant recently completed his time in the house of correction. However, this issue is not thereby rendered moot because the defendant continues to be on probation with a suspended sentence.

his sentence, which he eventually did. We cannot say that the single justice erred by providing this alternative to Beauchemin.

The judgments are reversed and the verdicts set aside. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*