Neel, J.
INTRODUCTION
On June 24, 1993, a jury found the defendant guilty of second degree murder. The Appeals Court affirmed. Commonwealth v. Russell, 38 Mass.App.Ct. 199, 205 (1995). New counsel was appointed and on September 21, 1998, the defendant filed the current motion for new trial, pursuant to Mass.R.Crim.P. 30. The defendant argues that he is entitled to a new trial because the trial judge erroneously instructed the jury on the third prong of malice. Additionally, the defendant argues that he was denied effective assistance of counsel. For the reasons discussed below, the defendant’s motion is denied as to both grounds.
*318 BACKGROUND[1]
Following a six day trial, the defendant was convicted of second degree murder. The jury did not specify which prong of malice the verdict was based on. The Commonwealth’s theory of the case was that the defendant intentionally ran over the victim with his car. At trial, the defendant did not contest whether he had hit and killed the victim; rather, he contended that any contact had been accidental. The defendant testified that he had been drinking alcohol and taking prescription drugs on the day he ran over the victim, and was unaware at the time that he had hit anyone.
During its charge, the Court instructed the jury several times that, under the third prong of malice, malice could be inferred if the defendant had an unexcused intent to do an act creating a plain and strong likelihood that death “or grievous bodily harm” would follow. The defendant did not object to this instruction at trial (indeed, defense counsel requested it), nor did he raise the issue on his direct appeal.
DISCUSSION
As noted above, this motion for new trial comes after the conviction has already received appellate review. Accordingly, the presumption tilts in favor of finality of the verdict, and a new trial “should not be granted except for substantial reasons.” Commonwealth v. Amirault, 424 Mass. 618, 637 (1997) quoting Commonwealth v. Tucceri, 412 Mass. 401, 406 (1992). Before a motion judge may consider the merits of a collateral attack on a conviction, see Commonwealth v. Curtis, 417 Mass. 619, 635 n.14 (1994), the judge must first determine whether the issues the defendant now attempts to argue could have been raised at an earlier time. See Amirault, 424 Mass. at 639.[2] “(T]he concern for finality demands that a defendant present every claim and argument he might fairly have had available to him the first time around.” Id. “(A]bsent extraordinary circumstances where there has been ineffective assistance of counsel or where allowing the conviction to stand ‘will result in "manifest injustice," ’ “ any issue that could have been raised earlier, and was not, is considered waived, and ’’may not be raised for the first time on collateral review." Id. (citations omitted); see also Mass.R.Crim.P. 30(c)(2). ‘The test for waiver is whether ‘the theory on which [the defendant’s] argument is premised has been sufficiently developed to put him on notice that the issue is a live issue.’ ’’ Amirault, 424 Mass. at 639 (citations omitted). If the defendant is on notice of an issue and fails to raise that issue either at trial or on direct appeal, then that issue is waived. See Commonwealth v. Harrington, 374 Mass. 446, 449 (1980). Further, the doctrine of waiver applies equally to constitutional claims. See Commonwealth v. Watson, 409 Mass. 110, 112 (1991).
Here, the defendant advances two grounds in support of his motion for new trial. First, the defendant argues that the trial judge gave erroneous instructions on the third prong of malice. In particular, the defendant argues that the judge instructed the jury that malice may be inferred from the intent to act which creates a risk of death or grievous bodily harm, thereby enabling the jury to infer malice from conduct which created a risk of injury only. The defendant also argues that prior counsel’s failure to object to and failure to raise on appeal the issue of the incorrect instructions constitute ineffective assistance of counsel.
1. Malice Instructions
The defendant is correct that the third prong malice instructions given at trial erroneously included “grievous bodily harm” language. As the Supreme Judicial Court has stated, “the third prong of the malice definition can only be satisfied by proof that [the defendant’s actions created] ... ‘a plain and strong likelihood of death.’ ” Commonwealth v. Fuller, 421 Mass. 400, 412 (1995), quoting Commonwealth v. Sires, 413 Mass. 292, 303 n.14 (1992).[3] Indeed, the main difference between third prong murder and involuntary manslaughter is the degree of risk created by a defendant’s conduct. See Commonwealth v. Vizcarrando, 427 Mass. 392, 396 (1998). “The risk for the purposes of the third prong of malice is that there was a plain and strong likelihood of death . .. The risk that will satisfy the standard for wilful and wanton conduct amounting to involuntary manslaughter ‘involves a high degree of likelihood that substantial harm will result to another.’ ” Commonwealth v. Sires, 413 Mass. 303-04 n.14 (1992) (citation omitted). Further, “[a] conviction of murder founded on a state of mind sufficient only to support a manslaughter conviction violates due process.” Commonwealth v. Vizcarrando, 427 Mass. 392, 396-97 (1998).
The law on third prong malice instructions was sufficiently clear at the time of trial and direct appeal to put the defendant on notice that this particular issue was “a live issue.” Commonwealth v. Amirault, 424 Mass. 618, 639 (1997); see also Commonwealth v. Sires, 413 Mass. 292, 303 n.14 (1992) (“[w]e reject any suggestion that we have made something less than a plain and strong likelihood of death sufficient for proof of the third prong of malice”); Vizcarrando, 427 Mass. at 398 n.5. Therefore, because the case law was sufficiently developed to put the defendant on notice, thus affording him a fair opportunity to raise the issue either at trial or on direct appeal, and the defendant failed to raise the issue earlier, “the claim is waived and may not be raised for the first time on collateral review." Amirault, 424 Mass. at 639; see also Commonwealth v. Harrington, 379 Mass. 446, 449 (1980) (“issues not raised at trial or pursued in available appellate proceedings are treated as waived”); Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984) (defendant not entitled to judicial “determination whether the instructions were erroneous if the issues presented could have been raised at trial or on direct appeal but were not”). “However fundamental *319 the right,... the defendant who had a fair opportunity to raise it may not belatedly invoke that right to reopen a proceeding that has already run its course." Amirault, 424 Mass. at 639 (citations omitted).[4]
The Court may, in its discretion, relieve the defendant of such waiver and consider the issue on its merits. This “rarely used” power, Commonwealth v. Freeman, 352 Mass. 556, 564 (1967), however, “should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." Commonwealth v. Harrington, 379 Mass. 446, 449 (1980); see also Commonwealth v. Amirault, 424 Mass. 618, 640 (1997). Generally, three conditions must be established to substantiate the existence of a “substantial risk of a miscarriage of justice.” Amirault, 424 Mass. at 650. “First, there must be a genuine question of guilt or innocence . . . Second, the error must be sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error. Third, it must be inferable from the record that counsel's failure to object was not simply a reasonable tactical decision.” Id. at 650-51, quoting Commonwealth v. Miranda, 22 Mass.App.Ct. 10, 21 (1986) (citations omitted).
In the present case, after looking at the evidence and jury charge as a whole, see Amirault, 424 Mass. at 650, and after sober reflection, the Court concludes that there is no substantial risk of a miscarriage of justice. Although the erroneous instruction concerned the elements of the crime, the error in the instruction did not create a risk of miscarriage of justice because the evidence at trial demonstrated that the victim’s injuries were inflicted in such a manner that malice was ineluctably inferable. See Commonwealth v. Vizcarrando, 427 Mass. 392, 397 (1998); see also Commonwealth v. Niland, 45 Mass.App.Ct. 526, 532 (1998).[5] There is, therefore, no danger that the jury improperly inferred malice, see Vizcarrando, 427 Mass. at 397-98, and the Court is not left “with an abiding sense that a miscarriage of justice has occurred,” Amirault, 424 Mass. at 650; see also Commonwealth v. Watson, 409 Mass. 110, 114 (1991).
The Court holds that the defendant, by failing previously to object to the erroneous instructions or to raise the issue on appeal, waived his right to challenge the third-prong malice instructions. Furthermore, finding no substantial risk of a miscarriage of justice, the Court declines to exercise its discretionary authority to relieve the defendant of this waiver.
2. Ineffective Assistance of Counsel
The defendant also contends that both his trial and appellate counsel rendered ineffective assistance of counsel because they failed to object to or to raise on appeal the issue of the erroneous third prong malice instructions. As a preliminary matter, the Court notes that the issue of whether appellate counsel gave ineffective assistance is not considered waived,[6] so the issue will need to be addressed on its merits. See Breese v. Commonwealth, 415 Mass. 249, 250 (1993); see also Commonwealth v. Egardo, 426 Mass. 48, 50 (1997); Commonwealth v. Lanoue, 400 Mass. 1007, 1008 (1987); Haberek v. Commonwealth, 421 Mass. 1005, 1005 (1995).
In the procedural posture of this case, the test for ineffective assistance of counsel is whether the errors or omissions create a substantial risk of miscarriage of justice. See Egardo, 426 Mass. at 52 n.8.[7] Whether the erroneous third prong malice instructions created a substantial risk of a miscarriage of justice depends on “whether the evidence required the jurors to find a plain and strong likelihood that death would result from the defendant’s actions.” Commonwealth v. Vizcarrando, 427 Mass. 392, 397-98 (1998) (emphasis in original).
Defendant argues that the erroneous instructions in this case allowed the jury to conclude that his actions created a plain and strong likelihood of grievous bodily injury but not of death, and upon that basis to convict him of murder, whereas under the law the defendant would only be guilty of manslaughter. If, however, the evidence required a finding of risk of death from the defendant’s actions, then the error in the instructions would be rendered nonprejudicial. Id; see also Commonwealth v. Niland, 45 Mass.App.Ct. 526, 532 (1998) (“the erroneous charge that third prong malice includes ‘a plain and strong likelihood that death or grievous bodily harm would follow’ is harmless error where the ‘evidence does not warrant a finding of risk of harm less than a strong likelihood of death’ " (citations omitted)). On the other hand, if the evidence only permitted, but did not require, an inference of malice, that is, if the victim’s injuries were inflicted in such a manner that was not “inherently deadly,” Commonwealth v. Williams, 428 Mass. 383, 387 (1998), then the erroneous instructions could be prejudicial because there would be a risk that a defendant was convicted of murder based on a state of mind sufficient to sustain only a manslaughter conviction. Vizcarrando, 427 Mass. at 396-97. In the latter case, a failure to object to the incorrect instructions would necessarily be ineffective assistance of counsel.
Here, the evidence relating to the circumstances of the victim’s death does not warrant a finding of risk of harm less than death. The medical examiner testified that the victim died of head injuries and that cleavage pockets (resulting from a collision with a car bumper) on the victim’s legs were consistent with being hit by a car traveling between ten and twenty miles per hour. (Trial transcript (“Tr.”) 5-16, 5-38.) The defendant himself testified that, when turning his car around “(o]n Market Street near the Olympia Restaurant” (in front of which the decedent was struck), he was traveling “no more than twenty miles per hour.” (Tr. 6-91.) The state chemist testified that rust stains were found on the front and back shoulder areas, on the backs of *320 the arms, and on the back of the victim’s sweater, as well as on both legs of victim’s jeans and on her sneakers. (Tr. 4-34-4-37.) Samples removed from the underside of the defendant’s car were also tested and determined to be rust. (Tr. 4-36-4-37.) The chemist also testified that the paint chips found on the victim’s sweater and jeans were consistent with paint samples taken from the hood or from the front quarter of the defendant’s car. (Tr. 4-32-4-34.)
By its verdict, the jury found that the defendant acted intentionally, that is, that the defendant intentionally drove his automobile into and over the victim.[8] The issue remains, therefore, what level of risk was created by this action. The Court concludes that driving an automobile into and over a person at a speed approaching or equal to twenty miles per hour creates a plain and strong likelihood of death and death only. Compare Commonwealth v. Fryar, 425 Mass. 237, 248 (1997) (stabbing victim in chest created risk of death only); Commonwealth v. Niland, 45 Mass.App.Ct. 526, 532 n.4 (1998) (shooting victim in face created risk of death only); Commonwealth v. Mello, 420 Mass. 375, 390 (1998) (throwing “Molotov cocktail” onto porch area of inhabited dwelling created risk of death only); with Commonwealth v. Vizcarrando, 427 Mass. 392, 397 (1998) (punching and hitting infant created risk of death and grievous bodily harm). No evidence was presented from which the jury could conclude that the victim’s injuries were inflicted in a manner other than likely to cause death. See Vizcarrando, 427 Mass. at 397.
Because the evidence presented at trial compelled a finding of risk of death, the incorrect jury instructions do not give rise to a substantial risk of a miscarriage of justice. There is, therefore, no basis for the defendant’s ineffective assistance of counsel claim. See Commonwealth v. Curtis, 417 Mass. 619, 625 n.4 (1994) (“if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . there is no basis for an ineffective assistance of counsel claim”).
ORDER
For the reasons stated above, the defendant’s motion for a new trial based on a claim of ineffective assistance of counsel is DENIED. As for the motion for new trial based on erroneous jury instructions, that issue has been waived and, having concluded that defendant has not demonstrated that a miscarriage of justice has occurred, I expressly decline to resurrect; on that basis, the motion is DENIED.

 Further facts of the case are set out in Russell, 38 Mass.App.Ct. at 200-01.

 Where, as here, the defendant also claims ineffective assistance of counsel, it is unclear whether the distinction between consideration of an issue on its merits, versus finding waiver and not addressing the merits, is still important. See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (“appellate review of an issue presented on a motion for a new trial, filed after there has been appellate review of the conviction, will be on the same standard whether the motion judge considered the issue on the merits or not. The issue might also come before an appellate court indirectly, in any event, if the defendant were to argue in support of a new trial motion that prior counsel was ineffective in a constitutional sense, either in not preserving the issue at trial or in not arguing it on appeal”). For the purposes of this motion, the Court will assume the distinction is valid.

 “Malice as an element of murder may be proved by evidence establishing any one of three facts beyond a reasonable doubt: if, without justification or excuse, (1) the defendant intended to kill the victim (the so-called first prong of malice), or (2) the defendant intended to do the victim grievous bodily harm (the second prong), or (3) in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act (the third prong).’’ Commonwealth v. Sneed, 413 Mass. 387, 388 n.1 (1992).

 Compare Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984) (“[w]e have excused the failure to raise a constitutional issue at trial or on direct appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case”).

 Compare Commonwealth v. Amirault, 424 Mass. 618, 647 n.21 (1997) (noting that the discretionary “power is frequently used in respect to jury charges that include erroneous instructions as to the elements of a crime. This standard is well suited to these cases because, when the elements of a crime are incorrectly stated, there is a substantial risk that a person has been convicted for a course of conduct that is not criminal at all.”).

 The defendant is deemed to have waived the ineffective assistance claim vis a vis his trial attorney because the direct appellate counsel could have raised the issue. Whether appellate counsel was ineffective, however, “necessarily depends on whether the defendant received ineffective assistance of counsel at trial...” Breese v. Commonwealth, 415 Mass. 245, 252 (1993). The Court will, therefore, need to examine the effectiveness of trial counsel.

 When a defendant has not waived the issue of trial counsel’s effectiveness, the test for ineffective assistance is “whether there has been a serious incompetency, inefficiency, or inattention of counsel . . . and if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence [sic].” Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). This test has been compared to the substantial risk of miscarriage of justice test. See Curtis, 417 Mass. at 625 n.4 (“]t]he standard that this court has used for testing the ineffectiveness of counsel, . . . although more detailed, seems not significantly different from the standard of a substantial risk of a miscarriage of justice”); see also Egardo, 426 Mass. at 52 n.8; Commonwealth v. Amirault, 424 Mass. 618, 652 n.24 (1997).

 The defendant argues that the erroneous instructions allowed the jury “to return a murder conviction on the understanding that impaired driving alone created a plain and strong likelihood of grievous injury,” that is, that the defendant’s intentional act which created the risk of harm was drunk driving, and that drunk driving in general creates a risk of grievous bodily injury which, under the incorrect instructions, equaled malice. This argument is meritless. No jury hearing these instructions, considered as a whole, could have convicted the defendant of murder merely because he drove while drunk. The intentional act of which the defendant was convicted was driving into and over the victim.